UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISMAEL ALEJANDRO ROCHA-VALDEZ,<br><br>Defendant. | Case No.: 3:19-mj-24175-AHG<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO DISMISS THE COMPLAINT;**<br><br>**(2) DEFERRING RULING ON MOTION TO SUPPRESS STATEMENTS UNTIL TRIAL;**<br><br>**(3) DENYING MOTION TO COMPEL DISCOVERY; and**<br><br>**(4) GRANTING MOTION FOR LEAVE TO FILE FURTHER MOTIONS**<br><br>**[ECF No. 26]** |

Before the Court are Defendant's consolidated motions to: 1) dismiss the complaint; 2) suppress statements; 3) preserve evidence and compel discovery; and 4) grant leave to file further motions. ECF No. 26. The Court took the matters raised in the Motion under submission after oral argument on January 7, 2020. ECF No. 33. Having considered the

1

parties' papers and their argument, the Court enters the following Order:

## I. BACKGROUND

Defendant is charged with violating 8 U.S.C. § 1325(a)(1), which provides, in relevant part, that "[a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall [be guilty of a misdemeanor]." *See* ECF No. 1. The Government alleges that on October 9, 2019, a United States Customs and Border Patrol ("Border Patrol") agent encountered Defendant sitting on a large rock in an area known as the "Cuchama Truck Trail," approximately one quarter mile north of the United States/Mexico International Boundary and approximately five and a half miles west of the Tecate, California, Port of Entry. ECF No. 1 at 2. The Government alleges that Defendant stated that he is a citizen of Mexico without immigration documents. *Id.* The agent placed Defendant under arrest. *Id.* The Government alleges that Defendant was advised of his *Miranda* rights and agreed to answer questions without an attorney present. *Id.* During custodial questioning, the Government alleges that Defendant stated that he is a citizen of Mexico and he illegally entered the United States on October 9, 2019.

On December 24, 2019, Defendant filed the consolidated motion currently before the Court, seeking various forms of relief, including dismissal of the Complaint. ECF No. 26-1. In addition to seeking dismissal of the Complaint, Defendant moves the Court to: 1) order preservation of evidence; 2) compel discovery; 3) suppress statements; and 4) grant leave to file further motions. *Id.* The Court will address the Motion to Dismiss before turning to the other motions.

## II. DISCUSSION

### A. Motion to Dismiss

Defendant moves to dismiss the Complaint on five grounds: 1) Congress violated the non-delegation doctrine when it enacted § 1325(a)(1); 2) Congress violated the Due Process Clause's prohibition on vague laws when it enacted § 1325(a)(1); 3) Defendant's prosecution violates equal protection and due process; 4) § 1325 violates the Due Process Clause; and 5) the complaint fails to allege all the elements of § 1325.

The Court addresses each of Defendant's arguments below.

### 1. Violation of the Non-Delegation Doctrine

Defendant argues that the § 1325 charge against him should be dismissed under the non-delegation doctrine because Congress delegated its core legislative functions to the Executive Branch by allowing immigration officers to determine the times and places when an alien can lawfully enter the United States. *See* 8 U.S.C. § 1325(a) (defining as one of three alternative elements of the offense the entry or attempted entry into the United States "at any time or place other than as designated by immigration officers"). The non-delegation doctrine generally forbids Congress from transferring "powers which are strictly and exclusively legislative" to other branches of government. *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (citation omitted). Defendant claims that the statute does not provide any intelligible principle to guide this discretion.

"In our increasingly complex society, replete with ever changing and more technical problems, [the Supreme] Court has understood that Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Id.* (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)) (internal alteration and quotations omitted). Therefore, as long as "Congress has supplied an intelligible principle to guide the delegee's use of discretion[,]" a statute does not run afoul of the non-delegation doctrine. In performing the analysis of whether such an "intelligible principle" is supplied, the Court must "constru[e] the challenged statute to figure out what task it delegates and what instructions it provides." *Gundy*, 139 S. Ct. at 2123. Importantly, that task of construction does not require the Court to look only at the text of the statute "in isolation." Rather, the intelligibility of the standards that guide the delegee's discretion must be considered in light of "the purpose of the [statute at issue], its factual background, and the statutory context in which they appear." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 104 (1946).

Construing § 1325 in *United States v. Nunez-Soberanis*, 406 F. Supp. 3d 835 (S.D. Cal. 2019), another court in this District rejected the same non-delegation argument Defendant presents here, reasoning as follows:

> Defendant attempts to read into the statute a broader delegation than actually occurred by arguing that any individual immigration official can designate any piece of land as a place for entry. Not so. Congress requires that aliens seeking lawful entrance to the United States do so at a port of entry. *See United States v. Corrales-Vasquez*, 931 F.3d 944, 946 (9th Cir. 2019); *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017). Ports of entry can only be designated or de-designated by the Secretary of Homeland Security subject to the Administrative Procedures Act. *See* 8 CFR § 100.4(a). Ports of entry also necessarily include facilities, staffed by immigration officials that are set up to accept applications for admission. *Aldana*, 878 F.3d at 882. To interpret Section 1325(a) to permit a border patrol agent to designate a portion of the border fence "on a whim" is in direct conflict with Congress's clear statutory scheme.

*Id.* at 839-40. This Court agrees. Contrary to Defendant's argument, when viewed in the proper context rather than viewing the statutory text in isolation, § 1325's delegation to immigration officers to designate time and place of lawful entry is not unfettered, but significantly constrained. *Am. Power*, 329 U.S. at 104; *see also Gundy*, 139 S. Ct. at 2123-24 (considering the text of a statute "alongside its context, purpose, and history" to determine the extent of discretion afforded to the delegee in question).

Congress's delegation of the duty to designate the time and place for lawful entry of aliens also does not expand the scope of criminal liability under § 1325. Opening or closing ports of entry does not change or expand the conduct that leads to criminal liability under § 1325. Closing ports or restricting hours of operation may make it more cumbersome for aliens to enter legally, but it does not create new or different criminal liability.

Therefore, the Court denies Defendant's motion to dismiss based on the non-delegation doctrine.

### 2. Vagueness

Defendant argues the charge against him should be dismissed because § 1325 is void for vagueness. A statute can be impermissibly vague in either of two circumstances: 1) the statute "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;" or 2) the statute "authorizes or even encourages

arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Defendant argues that § 1325 is impermissibly vague because it permits immigration officers unlimited discretion to decide what places to designate for lawful entry. As discussed above, this is not correct. Individual Border Patrol agents cannot designate ports of entry on a whim. Section 1325 clearly delineates the conduct that it prescribes and is not impermissibly vague.

Therefore, the Court denies Defendant's motion to dismiss based on vagueness.

### 3. Violation of Equal Protection and Due Process

Defendant argues that his prosecution violates the Equal Protection and Due Process Clauses because the Government brought this charge through the district court rather than through the Central Violations Bureau ("CVB"). As described in Defendant's Motion, "CVB defendants are generally cited and released, receive notice of their court date in the mail, and resolve their charges without a criminal conviction." ECF No. 26-1 at 3. Defendant was not charged through CVB. Instead, Defendant was taken into custody following arrest on October 9, 2019, and brought before a magistrate judge for his initial appearance the following day. ECF No. 3. The magistrate judge granted the Government's motion to detain Defendant at his initial appearance based on a review of the factors set forth in the Bail Reform Act, 18 U.S.C. § 3142(g). *Id.* The undersigned considered and denied Defendant's request for bond modification at a hearing on November 7, 2019. ECF No. 14. A district judge denied Defendant's appeal of this ruling on December 20, 2019, ECF No. 25, and the United States Court of Appeals for the Ninth Circuit affirmed this decision on February 5, 2020. ECF No. 34. Defendant has therefore remained in custody since his arrest.

First, Defendant argues that the Government violated the Equal Protection Clause of the United States Constitution by failing to prosecute Defendant through the CVB because by doing so, the Government discriminated against Defendant on the basis of alienage, national origin, and race. The Equal Protection Clause is part of the Fourteenth Amendment, and states in relevant part that the government shall not "deny to any person

within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

Defendant does not address the appropriate standard for the Court's review of this claim in his motion. The Court agrees with multiple judges in this district who have concluded that the prosecution of § 1325 defendants outside the CVB does not create a classification based on alienage that would invoke strict scrutiny. *See, e.g.*, *United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1154 (S.D. Cal. 2019); *United States v. Silva-Sosa*, No. 18MJ23270-KSC, 2019 WL 1470868, at *2 (S.D. Cal. Apr. 3, 2019); *United States v. Mazariegos-Ramirez*, No. 18MJ22276-WQH, 2019 WL 338923, at *2 (S.D. Cal. Jan. 28, 2019); *United States v. Chavez-Diaz*, No. 18MJ20098 AJB, 2018 WL 9543024, at *3 (S.D. Cal. Oct. 30, 2018), *rev'd on other grounds*, No. 18-50391, 2020 WL 562292 (9th Cir. Feb. 5, 2020).[1] The Government's decision to bring § 1325 charges outside the CVB creates a distinction among defendants based on their alleged criminal activity (attempting to enter or entering the United States unlawfully), not based on alienage. *See Ramirez-Ortiz*, 370 F. Supp. 3d at 1154 (quoting *United States v. Mendoza-Hinojosa*, 216 F.3d 1085, 2000 WL 429701, at *2 (9th Cir. 2000) (unpublished table case) for the dual proposition that there exists a "distinction between statutes which classify based on alienage and statutes which classify based on criminal actions" and that "imposing different rules on immigrants versus citizens does not in itself create a suspect classification").

Moreover, the Supreme Court has recognized that Congressional acts regarding immigration are "subject only to narrow judicial review." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (citation omitted). In *Fiallo*, the Supreme Court recognized that "in the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that

---

[1] *Chavez-Diaz* was reversed by the Ninth Circuit because the Court of Appeals found that the defendant had waived his right to bring his constitutional challenges on appeal by entering an unconditional guilty plea, while the district court had found no waiver and considered the constitutional challenges on their merits. *See Chavez-Diaz*, 2020 WL 562292, at *2-6. Therefore, the Ninth Circuit opinion reversing the district court does not address the merits analysis, much less contradict it.

would be unacceptable if applied to citizens.'" *Id.* (quoting *Mathews v. Diaz*, 426 U.S. 67, 80 (1976)). Even if a failure to prosecute § 1325 defendants through the CVB has a disparate impact on aliens, therefore, it would not be subject to strict scrutiny. *See also United States v. Barajas-Guillen*, 632 F.2d 749, 752 (9th Cir. 1980) ("[C]lassifications among aliens made pursuant to the immigration laws need only be supported by some rational basis to fulfill equal protection guarantees.").

Applying the rational basis test, the Court finds that the Government's decision to prosecute Defendant outside the CVB readily meets this standard. Although the Equal Protection Clause requires all similarly situated persons to be treated alike, "so too, 'the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal alteration and citation omitted). "Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'" *Id.* at 223. In analyzing whether the Government's decision to prosecute § 1325 defendants outside the CVB survives rational basis review, the question is whether "the classification at issue bears some fair relationship to a legitimate public purpose." *Hoffman v. United States*, 767 F.2d 1431, 1436 (9th Cir. 1985) (quoting *Plyler*, 457 U.S. at 216).

The Government's proffered reasons for finding Defendant's § 1325 offense unsuitable for disposition through the CVB include: 1) The CVB is "a national center charged with processing violation notices (tickets) issued and payments received for petty offenses committed on federal property[,]" and thus a criminal misdemeanor offense under Title 8 of the United States Code is not the type of offense for which the CVB calendar was designed, ECF No. 30 at 7 (quoting Central Violations Bureau, www.cvb.uscourts.gov); and 2) Since Defendant was arrested for his alleged offense rather than being given a violation notice, Rule 5 of the Federal Rules of Criminal Procedure entitled Defendant to be taken "without unnecessary delay" before a magistrate judge following his arrest, making it impossible to route his case to the CVB for processing.

7

*Id.* at 8; Fed. R. Crim. P. 5(a)(1)(A). Both of these reasons for processing § 1325 defendants differently than other defendants accused of federal "petty offenses" satisfy the rational basis standard of review.

In finding the test met, the Court here adopts Judge Anthony J. Battaglia's detailed explanation and persuasive reasoning on the same question in *Chavez-Diaz*, 2018 WL 9543024, at *1–4. In addition, the Court notes that requiring the Government to process § 1325 defendants through the CVB would likely prove unworkable given the nature of the charge: unlawful entry into the United States by an alien. As Defendant notes, CVB defendants are not taken into custody. They are allowed to continue living in the United States without restriction, and typically given the option to either pay a fine or appear at a hearing. That would not be a manageable way to address individuals whose alleged offense is entering the United States without authorization.

Second, Defendant argues that the prosecution of Defendant violates the Equal Protection Clause because failing to prosecute Defendant through CVB amounts to selective prosecution or selective enforcement. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). The standard for proving a claim of selective prosecution is demanding. *Id.* The executive branch, through the Attorney General and United States Attorneys, has wide discretion in enforcing criminal laws. *Id.* at 464. As long as there is probable cause to support a prosecution, "whether or not to prosecute, and what charge to file or bring before a grand jury," falls squarely within the prosecutor's discretion. *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)); *see also United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion").

Defendant does not argue that the fact he was charged under § 1325 reflects selective prosecution. Instead, he argues that failing to prosecute him through CVB reflects selective prosecution. ECF No. 26-1 at 3. It is not clear that the manner of processing, rather than

the fact of prosecution, can be the basis of a claim for selective prosecution. Nonetheless, Defendant has not shown that he is similarly situated to a CVB defendant, but treated differently. Section 1325 defendants are not similarly situated to CVB defendants merely because their offenses carry comparable punishments. As discussed above, alienage is an element of § 1325, and the statute passes constitutional muster due to Congress's "broad power over immigration and naturalization." *Fiallo*, 430 U.S. at 792.

Defendant's claim that the charge should be dismissed because of selective enforcement also fails. A selective enforcement claim focuses on the investigatory decisions of government agencies, such as the United States Customs and Border Patrol. *United States v. Sellers*, 906 F.3d 848, 853 (2018). Although investigatory decisions of agencies are not entitled to the same deference as prosecutorial decisions by the Attorney General or United States Attorneys, *id.*, Defendant's selective enforcement claim relates solely to how the charge brought against him by the United States Attorney's office was processed. Defendant's claim is not related to any investigatory activity by the Border Patrol or any other federal agency preceding the charge. The Government's prosecution of Defendant outside the CVB does not amount to improper selective prosecution or enforcement.

Third, Defendant argues his prosecution outside the CVB violates the Due Process Clause. Defendant argues that his substantive due process rights have been violated because it shocks the conscience to deprive Defendant of the benefits of the CVB process. ECF No. 26-1 at 4. The Court disagrees. Defendant's arrest and detention were supported by a showing of probable cause, which was reviewed and approved by a magistrate judge. Following his detention, Defendant was brought to the federal building, where he met with an attorney. A magistrate judge appointed counsel to represent him and Defendant had multiple opportunities to seek conditions of pretrial release, and appeal the Court's decisions to detain him. None of these procedures shocks the conscience.

Defendant's claim that his right to procedural due process was violated also fails. A procedural due process analysis considers three factors: 1) the "private interest that will be

9
3:19-mj-24175-AHG

affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To be sure, the liberty interest that is implicated when an individual is detained by the Government is substantial. But that interest must be weighed against the Government's interest, and as discussed above, the Government has put forth substantial reasons why processing § 1325 defendants through the CVB would not be practicable. Further, the procedures that were followed in Defendant's prosecution adequately protect against the risk of an erroneous deprivation of that interest. Those procedures include a probable cause review to support detention, appointment of counsel, and consideration of pretrial release conditions under the Bail Reform Act. Therefore, Defendant's procedural due process claim does not establish a constitutional violation under the *Mathews* balancing test.

The Court denies Defendant's motion to dismiss based on his constitutional challenges to the Streamline process.

### 4. Constitutionality of § 1325

Defendant argues that § 1325 is unconstitutional because alienage is an element of § 1325, and the definition of "alien" set forth in 8 U.S.C. § 1101(a)(3), which defines the term as used throughout Chapter 8 of the U.S. Code, was found to violate the Equal Protection Clause as it relates to citizenship of children born abroad by the Supreme Court in *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 (2017). The Ninth Circuit rejected this same argument, however, in *United States v. Madero-Diaz*, 752 F. App'x 537, 538 (9th Cir. 2019). Inexplicably, Defendant raised this argument without also noting that the Ninth Circuit Court of Appeals has squarely rejected it. This Court does not have the authority or inclination to overrule the Ninth Circuit on this issue.

The Court denies Defendant's motion to dismiss based on the alleged unconstitutionality of § 1325.

### 5. Failure to Allege All Elements of Section 1325

Defendant argues that the charge should be dismissed because the Government failed to allege that Defendant knew he was an alien when he attempted to enter the United States, and thus failed to allege "all the elements of the charged offense" by omitting a *mens rea* element in the charging document. ECF No. 26-1 at 4.

The Court disagrees that knowledge of alienage is an element of a charge under § 1325. Defendant relies in part on *Rehaif v. United States*, 139 S. Ct. 2191 (2019) to make this argument. *Rehaif*, however, is distinguishable. In *Rehaif*, the Supreme Court held that a defendant can be convicted of possession of a firearm by an alien who is illegally or unlawfully present in the United States under 18 U.S.C. § 922(g) only if the Government shows that the defendant knew of his illegal or unlawful immigration status. *Rehaif*, 139 S. Ct. 2196. The Court's interpretation of § 922(g) was governed by the overall statutory scheme, which includes 18 U.S.C. § 924(a)(2). Section 924(a)(2) expressly provides for punishment of a defendant who "knowingly violates" § 922(g). There is no similar express requirement in 8 U.S.C. § 1325, however, that a violation be "knowing."

*Rehaif* does address the general standard for interpreting the *mens rea* requirement for an element of a criminal statute. *Id.* at 2195. The "longstanding presumption" is that "Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 74 (1994)). However, unlike the statute at issue in *Rehaif*, the element of alienage in a § 1325 charge does not criminalize "otherwise innocent conduct." *See Nunez-Soberanis*, 406 F. Supp. 3d at 843-45. The conduct that § 1325 criminalizes is attempting to cross the border outside the port of entry, free from official restraint. *See, e.g.*, *United States v. Argueta-Rosales*, 819 F.3d 1149, 1151 (9th Cir. 2016); *United States v. Lombero-Valdovinos*, 429 F.3d 927, 929 (9th Cir. 2005). Any person, whether a United States citizen or an alien, who engages in such conduct violates the laws of the United States. *Nunez-Soberanis*, 406 F. Supp. 3d. at 844 (citing 19 U.S.C. § 1459(a)). Therefore, the Government does not need to prove that a defendant

knew he or she was an alien to obtain a conviction for violating 8 U.S.C. § 1325(a)(1).

Defendant also argues that knowledge of alienage must be alleged because § 1325(a)(1) charges an attempt crime. But a defendant cannot be convicted of attempted illegal entry under § 1325 unless he or she has the specific intent to enter the country free from official restraint. *Lombera-Valdovinos*, 429 F.3d at 929. That specific intent is sufficient to meet the *mens rea* requirement for an attempt crime. *See, e.g.*, *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1193 (9th Cir. 2000) (requiring specific intent for an attempt crime resolves "the uncertainty whether the defendant's purpose was indeed to engage in criminal, rather than innocent, conduct.").

The Court denies Defendant's motion to dismiss based on failure to allege all elements of § 1325.

### B. Motion to Suppress

The Court **DEFERS** ruling on Defendant's motion to suppress his statements. The Court will hear further argument and rule on Defendant's motion to suppress at the date of trial, when it is clear which statements the Government intends to offer.

### C. Motion for Preservation and Production of Discovery

Next, Defendant moves the Court for an order to compel the Government to produce "all discovery and for the preservation of all evidence he is entitled to under the Constitution and the Federal Rules of Criminal Procedure." ECF No. 26-1 at 10. The Government opposes, stating that it has complied, and will continue to comply, with its discovery obligations. In particular, Defendant requests that the AUSA assigned to this case "oversee . . . a review of all personnel files of each agent involved, and . . . state on the record that he has done so and complied with his obligations to provide [all required] information." *Id.* Additionally, Defendant specifically requests "disclosure [of] all information in the government's possession" regarding the membership of any agent involved in this case in a certain Facebook group or other social media groups containing evidence of possible bias. *Id.* In response, the Government states that CBP counsel has reviewed the files of all agents involved and has found no impeachment information. ECF

12

No. 30 at 15. Therefore, Defendant's first request has been satisfied. The Government further states that it will make inquiries of the agents regarding social media membership and will either disclose the responses to Defendant or file a motion with the Court regarding whether the information gleaned from those inquiries is discoverable. *Id.* No such motion has been filed. Thus, there does not appear to be any specific undisclosed discovery at issue. For that reason, the Court denies the Motion as moot.

### D. Motion for Leave to File Further Motions

Finally, Defendant moves for leave to file further motions. Defendant's request is general, referring to no specific motion Defendant anticipates filing. *See* ECF No. 26-1 at 10. The Court is unaware of any authority that would limit Defendant's right to file further motions in this case, and the Government does not oppose the request, as long as such motions are based on newly discovered evidence. ECF No. 30 at 15. Therefore, the Court **GRANTS** the motion for leave to file further motions.

### III. CONCLUSION

For the reasons set forth above, the Court (1) **DENIES** Defendant's Motion to Dismiss the Complaint; (2) **DEFERS** ruling on Defendant's motion to suppress statements; (3) **DENIES AS MOOT** Defendant's Motion to Compel Discovery; and (4) **GRANTS** Defendant leave to file further motions.

**IT IS SO ORDERED.**

Dated: February 13, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge